STEVENS v. AMSINCK et al.

(Supreme Court, Appellate Division, Second Department. February 23, 1912.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—NONSUIT.

The evidence for plaintiff should be considered in the aspect most favorable to him on his appeal from a nonsuit.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 4024; Dec. Dig. § 927.*]

2. CONTRACTS (§ 29*)—ACTIONS—JURY QUESTION.

Whether a statement of an intention to contract and the attending circumstances are such as to give the other party the right to consider it as an offer is ordinarily a jury question.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 141–143; Dec. Dig. § 29.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CONTRACTS (§ 176*)—CONSTRUCTION—OFFER.

If a statement of intention to contract is ambiguous, it should be interpreted in the sense in which the promisor had reason to expect it was understood by the promisee, which is usually a jury question.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 176.*]

4. CONTRACTS (§ 176*)—BREACH—ACTIONS—JURY QUESTION—AGREEMENT.

In an action for damages for breach of a contract not to further actively solicit mercantile business in South Africa, but merely to fill unsolicited orders, whether the contract was to that effect, as claimed by plaintiff, *held* a jury question.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 176.*]

5. APPEAL AND ERROR (§ 1171*)—HARMLESS ERROR.

A judgment will not be reversed for mere failure to award plaintiff nominal damages, unless it be apparent that substantial damages should have been awarded had the legal rules been properly applied, in which case the judgment for nominal damages should be reversed to give plaintiff an opportunity to recover substantial damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4553; Dec. Dig. § 1171.*]

6. DAMAGES (§§ 6, 23*)—BREACH OF CONTRACT—SPECULATIVE DAMAGES.

Where the damages from breach of a contract cannot be exactly ascertained, the jury may make reasonable conjectures and probable estimates arising from other proof, though the damages must have been reasonably within the contemplation of the parties and directly traceable to the breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 5, 58–62; Dec. Dig. §§ 6, 23.*]

7. DAMAGES (§ 40*)—BREACH OF CONTRACT—PROFITS AND LOSS.

Damages for breach of contract may include losses and probable profits prevented.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 72–88; Dec. Dig. § 40.*]

8. DAMAGES (§ 117*)—MEASURE—BREACH OF CONTRACT.

The measure of damages for the breach of a contract is the value of the contract at the time of its breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 285, 286; Dec. Dig. § 117.*]

9. EVIDENCE (§ 498*)—OPINIONS—MATTERS SUBJECT OF DAMAGES.

The value of a contract at the time of its breach must be determined upon the relevant facts, and is not the subject of opinion evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2289; Dec. Dig. § 498.*]

10. DAMAGES (§ 22*)—MEASURE—BREACH OF CONTRACT.

Damages from breach of contract must be reasonably, though not mathematically, certain in their nature and as respects their cause.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 59–61; Dec. Dig. § 22.*]

11. DAMAGES (§ 175*)—EVIDENCE.

Defendants having agreed not to actively solicit business in the South African trade, but only to fill unsolicited orders, and to turn the rest of the business over to plaintiff to be cared for through the A. Company, in an action for breach thereof by defendants' subsequent solicitation of business, plaintiff offered evidence as to the general nature of the business and how it was conducted for defendants, and also that, after defendants' breach of contract, plaintiff, for the A. Company, dealt in the same class of commodities as were being sold by defendants, and as to the extent he was able to procure business from defendants' former cus-

tomers, and as to the amount of business secured generally after the breach. *Held*, that the evidence was admissible on the question of damages; there being no definite evidence available on the question.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 469–471; Dec. Dig § 175.*]

Action by W. Tyrie Stevens against Gustav Amsinck and others. On plaintiff's exceptions to the dismissal of the complaint, ordered to be heard in the first instance by the Appellate Division. Exceptions sustained, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Louis Marshall (Abraham Benedict, on the brief), for plaintiff.

Courtland V. Anable (DeLancey Nicoll, Cornelius J. Sullivan, and Raymond D. Thurber, on the brief), for defendants.

CARR, J. On the second trial of this action, the court dismissed the complaint of the plaintiff, and directed that his exceptions be heard in the first instance by this court, entry of judgment in the meanwhile being suspended. The case is now before us on the exceptions of the plaintiff and the defendants' motion for judgment. The action is at law to recover damages for a breach of contract.

[1] It is our duty to consider the facts proved by the plaintiff in the aspect most favorable to him, as a nonsuit was directed.

It appears that prior to February, 1901, the plaintiff had been a member of a copartnership which carried on the business of selling general merchandise in South Africa. This copartnership was dissolved, and in February, 1901, a written contract was entered into between the plaintiff and the defendants as copartners, whereby the plaintiff became the agent or representative of the defendants in the business of selling general merchandise in South Africa. This agreement obliged the plaintiff to turn over to the defendants "all patents, trade-marks, agencies, and compensation of which he is the owner, or of which he has control." It prescribed the duties of the plaintiff, and provided for his compensation at $300 per month in addition to proper expenses while in South Africa, "together with a sum equal to twenty-five per cent. (25%) of the net annual profits of said department"; i. e., the South African agency of which the plaintiff was to have charge. The contract was to run for three years, and it contained a clause as follows:

"It is understood that at the expiration of this contract this agreement shall be renewed upon such terms and for such length of time as shall be mutually satisfactory to the parties hereto."

The plaintiff entered into the performance of the duties required by the agreement, and the mutual arrangements between the parties were carried out apparently without controversy during the three years specified. When the original agreement expired, in February, 1904, the plaintiff was in South Africa in charge of the business of the defendant. No formal arrangements were made for the renewal

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the contract, but the business continued along as theretofore. On May 18, 1904, the plaintiff, with the consent of the defendants, left South Africa to return to New York on a visit. After reaching New York, he called upon his principals, and a discussion took place between them relative to an announced intention of the defendants to discontinue the South African department of their general business. It appeared that the defendants were of opinion that the net profits of this department were not commensurate with the volume of business done. The plaintiff attempted to dissuade the defendants from discontinuing their South African department. The discussion culminated on June 29, 1904, in an understanding between the plaintiff and the defendants which the plaintiff in his complaint in this action pleads as follows:

"Sixth. Thereafter, and on or about the 29th day of June, 1904, the defendants notified the plaintiff that they had decided to give up their said South African department, and to withdraw from the South African trade, except so far as orders might come to them unsolicited from three or four of the firms with whom they had theretofore carried on business, and the defendants thereupon agreed with the plaintiff for a valuable consideration. that they would turn over to him the entire business and good will of the said South African department (with the exceptions above mentioned), the office staffs connected with the said department, both in New York and in South Africa, and all brands and trade-marks connected with the said South African business which they owned or controlled, and all agencies which they had secured from various manufacturers and merchants to represent them in the South African trade, and to withdraw from and cease competition for the South African trade, except to the limited extent above mentioned. Thereupon, in consideration of the premises. the plaintiff agreed to waive all of his rights under his aforesaid contract with the defendants, and to accept therefor the aforesaid transfer of the defendants' business and good will, and their promise to withdraw from and cease competition for the aforesaid South African trade."

In the complaint, the plaintiff pleads, also, a breach of the agreement so alleged, and asks damages therefor. While the various defendants answer separately, their pleadings are the same in form. Each answers the allegations of the plaintiff as to the agreement in form as follows:

"(6) He admits that on or about the 29th day of June, 1904, the defendants notified the plaintiff that they had decided to give up their South African department as theretofore and then conducted, and agreed to turn over to said plaintiff the office staffs connected with said department both in New York and in South Africa, and all brands and trade-marks connected with said South African business which they owned or controlled, and all agencies which they had secured from the various manufacturers and merchants to represent them in the South African trade, and that plaintiff agreed to waive all of his alleged rights under said contract with the defendants, as alleged in the paragraph of the complaint herein numbered 'sixth,' but he denies each and every other allegation in said paragraph of the complaint herein numbered 'sixth.'"

Each defendant likewise denied a breach of the alleged agreement and the allegation of the complaint as to damages. When the plaintiff at the trial came to sustain the allegations of his complaint as to the alleged agreement, he gave proofs which may be summarized as follows: On June 29, 1904, he met the defendants Amsinck and Pavenstedt. He asked them for their final decision as to the continuance

or abandonment of the South African department. Amsinck, in the presence of Pavenstedt, said:

"I have decided to close the South African department. I don't like it. I don't want it. It has been a very large business, and I don't want my name on paper all over the world. I am getting an old man, and I want to leave my affairs in order. I will transfer the entire business to you, with the exception of three or four large accounts, such as Hunt, Leuchars & Hepburn, Baker, Baker, & Co., and Vanderbyl & Co. We will transfer to you all of the books, the staffs at New York and in South Africa, all brands, trade-marks, and agencies we are connected with in the South African business, and you can— We have nothing against you, Mr. Stevens. You can take your time about leaving. We will say this will be all right up to the 1st of September. You can come and go about your official duties here as you like."

Mr. Pavenstedt then spoke up, and said:

"Mr. Stevens, you understand that we are merchants, and, while we are giving up the South African business and will not seek business any further. in that field, you must clearly understand that if a merchant sends us an order from abroad, from any part of the world, accompanied by a letter of credit, we reserve the right to execute it."

Mr. Stevens said:

"Gentlemen, my contract is good for at least another three years; but, if you are willing to turn over to me a business worth $50,000 a year, all I can say is I will take it."

Mr. Pavenstedt then said:

"Mr. Stevens, if there is any firm here that you would like us to interview on your behalf, with whom you think of becoming connected, just let us know, and we will be glad to do it, and you may refer to us freely in every respect."

Mr. Stevens answered:

"I thank you, Mr. Pavenstedt. Will you be good enough to give me a letter to this effect, covering our agreement?"

Pavenstedt replied:

"With pleasure."

Thereupon the following letter was drawn up and delivered to Stevens:

"G. Amsinck & Co. 6 to 9 Hanover Street, New York.

"Tel. Address, Amsinck.

"New York, 29th June, 1904.

"To Whom It May Concern:

"We hereby beg to state that Mr. W. T. Stevens has been in our employ for over three years, being part of the time at the head of our South African department, and mostly as our agent and representative in South Africa, residing at Cape Town. We have much pleasure in stating that he proved to be an energetic and able man in this position. We now sever our connection with him as we give up our S. A. department for purely business reasons, and most heartily wish him good luck and success in his future career.                                G. Amsinck & Co."

Thereafter the plaintiff set about to connect himself with some firm or corporation engaged in the business of selling general merchandise in South Africa. In consequence of such efforts, the following correspondence passed between the parties to this action:

"New York, Aug. 2, '04.

"Messrs. G. Amsinck & Co., New York.

"Dear Sirs: In view of your decision to close the South African department and to withdraw all active representation from that field, in consequence of which you asked me to discontinue my services from Sept. 1st next, I beg to state that I am offered a position with the American Trading Co., but do not wish to accept until I have your authority in writing and your confirmation of the above also of the following:

"That you will allow me to take over those members of the staff at New York and in South Africa that I require. That you will transfer to the American Trading Company so far as lies in your power, all agencies from Mfrs. all trade-marks, brands, etc., now belonging to you and connected with South Africa.

"I should also be satisfied to have the account between us closed as it now stands each giving the other a clean receipt.

"Yours faithfully,          ·          W. Tyrie Stevens."

"G. Amsinck & Co., P. O. Box 242, New York.

"Tel. Address, Amsinck.          New York, 2d Aug. '04.

"W. Tyrie Stevens, Esq. Prst.

"Dear Sir: In answer to your favor of even date, we beg to say that our firm has not yet decided, whether we shall continue to do any business in South Africa or not.

"We shall transfer to the American Trading Co., as far as lies in our power, all agencies from manufacturers, trade-marks, brands, etc., connected with our S. Afr. business today.

"We hereby state that we consider the accounts between us closed and balanced, you waiving all claim on any interests in profits of the South African department for the present year, and we making no further claim upon you for any balance against you on our books. Please confirm this in writing to

"Yours truly,          G. Amsinck & Co."

"New York, Aug. 3, '04.

"Messrs. G. Amsinck & Co., New York.

"Dear Sirs: I am in receipt of your favor of 2nd inst. and I hereby confirm your remarks, except in respect to the possibility of your doing some South African business in the future. Regarding this I will rely on the assurance of Mr. Amsinck that you do not intend to seek business in that field, reserving to yourselves the right to execute orders if offered. You may therefore regard my engagement as cancelled fom Aug. 31st. prox.

"Thanking you for all past courtesies of which there are many, I remain,

"Yours faithfully,          W. Tyrie Stevens."

On August 2, 1908, the plaintiff entered into a contract with a corporation known as the American Trading Company, whereby he became its representative in South Africa in the business of selling general merchandise at an annual salary, together with an interest in the net profits. The defendants then sent to many of their customers written notices as follows:

"G. Amsinck & Co., P. O. Box 242, New York.

"Tel. Address, Amsinck.
          "New York, Aug. 5/04

"The Reeves Pulley Co., Columbus, O.

"Dear Sirs: The present serves to advise that we are about to give up our South African department, and Mr. W. Tyrie Stevens, who has represented us for over three (3) years in that territory, has made arrangements

to carry on the business with the American Trading Co., of this city, and will represent them in the above mentioned territory.

"We would thank you to transfer your contract and agency allowed us, over to the American Trading Co., who will, doubtless, be able to handle the business to your entire satisfaction.

"Yours very truly,              G. Amsinck & Co."

The plaintiff claims that the facts above stated establish a contract between him and the defendants, whereby they bound themselves to refrain from active solicitation of business in South Africa. If such be the case, then, under the other proofs in this case, there was a clear breach subsequently of such agreement, inasmuch as the defendants resumed their South African business as theretofore conducted, and actively solicited trade in competition with the plaintiff and the American Trading Company, and as to this there is no controversy. It is the contention of the defendants that no binding contract was made between the parties on June 29, 1908, to the extent that the defendants should refrain thereafter from active solicitation of trade in South Africa. They urge that whatever was said at that time on that question was not contractual in nature, but was a mere statement of intention subject to change, and from which no binding obligation resulted.

[2] While it is true that a mere statement of intention may not be a sufficient basis for such an acceptance as will result immediately in a binding agreement, yet whether the terms of the statement and the attending circumstances are such as to give the other party the right to act upon it as an intended offer is a question to be submitted to the jury. Thruston v. Thornton, 1 Cush. (Mass.) 89; Henderson Bridge Co. v. McGrath, 134 U. S. 260, 10 Sup. Ct. 730, 33 L. Ed. 934.

[3] And, if the statement be in such form that it may be susceptible of more than one meaning, it is to be interpreted in the sense in which the promisor had reason to expect that it was understood by the promisee, and this is likewise a question for the jury. White v. Hoyt, 73 N. Y. 505, 511.

[4] Whether, therefore, a binding contract was made between these parties that the defendants should withdraw from active solicitation of business in South Africa, but at the same time reserving the right to accept all orders as might come to them without such solicitation of business, should have been submitted to the jury, and as, if there was such an agreement, there was concededly a breach, the jury should have been directed to find at least nominal damages if they found the agreement.

[5] A judgment will not be reversed on appeal simply because a plaintiff has not been allowed to recover nominal damages, where that judgment does not serve as an estoppel in respect to other interests; but, where it is apparent that on a proper application of legal rules substantial damages may be recoverable on sufficient proofs, a judgment so entered should be reversed for the failure to award nominal damages, and simply in order that an opportunity may be given to recover such substantial damages as competent proofs may justify. Thomson-Houston El. Co. v. Durant Land Imp. Co., 144 N. Y. 34, 39 N. E. 7.

, Whether it is certain the plaintiff can succeed in proving some substantial damages is a most troublesome question. Such attempt may have its difficulties, and the actual amount of such damages may not be free from some doubt.

[6] Yet where there has been a breach of contract, and it appears certain that some substantial damages have resulted, a defendant cannot escape liability for such damages simply because they cannot be ascertained exactly, and that, in order to approximate them, some speculative elements must enter into consideration; for, under such circumstances, a jury may indulge in "reasonable conjectures and probable estimates" arising from the other proofs. Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676. These other proofs, however, must be of such nature as to support such "reasonable conjectures and probable estimates," and the damages sought must be such as were reasonably within the contemplation of the parties, and directly traceable to the breach, and not the result of intervening causes.

[7, 8] They may include losses made and probable profits prevented. The measure of the damages is the value of the contract at the time of its breach. Wakeman v. Wheeler & Wilson Mfg. Co., ut supra.

[9] This question of value is to be determined upon the relevant facts antecedent and subsequent to the breach, and is not the subject of opinion evidence. Where the breach of contract is due to the act and fault of the defendant, by which probable profits are prevented, it has been said that:

"Courts ought not to be too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of future profits." Dart v. Laimbeer, 107 N. Y. 664, 669, 14 N. E. 291, 294.

[10] However, to be recoverable at all, the damages "must be certain, not only in their nature, but as respects the cause from which they proceed." Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58. The rule as to certainty of damages and of their cause does not require a mathematical certainty, but only such reasonable certainty as serves as a basis for the ordinary conduct of human affairs.

It appeared from the plaintiff's proofs that at the time the alleged agreement was made between the parties to this action there were a number of other firms competing with the defendants in the business conducted by their "South African department," five important firms and at least five others of lesser importance. It likewise appeared that during the time from 1901 to and including 1904 the defendants had done a large volume of business in an annual amount of over $1,000,000 in the "South African department," and that said business was in some years profitable to an extent which it is not now necessary to discuss.

[11] It appeared likewise that after the alleged breach the defendants did a South African business for several years, varying in volume from $200,000 to $300,000 a year. Proof was given of the general nature of the South African business, of the plaintiff's long experience in it, and of his general ability to handle it. When the plain-

tiff was asked on his direct examination to "state the general nature and character of the business and how it was conducted for the defendants," the question was excluded on the defendants' objection. Neither was he allowed to testify that after the alleged breach he, for the American Trading Company, dealt in the same class of commodities as had been and were being dealt in by the defendants' "South African department," nor to what extent he was able to procure business from the former customers of the "South African department," nor to what extent he was able to secure business at all after the alleged breach by the defendants. We think that the plaintiff should not have been prevented from giving evidence on these points. To be sure, such evidence lacked definiteness, but it was the best that was obtainable under the circumstances. It would seem to come within the spirit of the rule declared in Wakeman v. Wheeler & Wilson Mfg. Co., ut supra, and of many of the subsequent cases which have followed and applied that rule. In a somewhat similar case (Nash v. Thousand Island Steamboat Co., 123 App. Div. 148, 108 N. Y. Supp. 336) the court considered elaborately the rule applicable to cases of this character, and, finding an exclusion of evidence material to the issues and which would have been available to establish substantial damages had it been allowed, declared as follows:

"It is sufficient for the purpose of reversing this judgment to hold that there was some evidence that should have been submitted to the jury, and upon which the jury might have awarded substantial, as distinguished from nominal, damages."

In view of the fact that not even nominal damages were awarded to this plaintiff, we infer that the learned trial court was of opinion that the plaintiff had not established satisfactorily the factum of the contract upon which he sued. This question, as we have above indicated, we think was a question for the jury under the proofs in this record.

We think that the exceptions of the plaintiff should be sustained and a new trial granted, costs to abide the event. All concur, except JENKS, P. J., who takes no part.