Leo F. Levison, Respondent, *v.* Ingvald C. Oes, Appellant.

(Supreme Court, Appellate Term, First Department, January, 1917.)

Contracts — breach of — damages — evidence — verdict — trial — when judgment reversed.

The rule of damages for breach of a contract to sell and deliver a particular motion picture film is the difference between its market value and the contract price.

Where, in an action for breach of such a contract, it appears that defendant or the corporation he claimed to represent on the sale was the sole manufacturer of the film, it may be assumed that there was no market price therefor in the city where it was sold, and plaintiff is entitled to recover as special damages the expenses incurred by him in preparing to exhibit the film and his loss of profits, provided both have been properly pleaded, were within the contemplation of the parties and were the proximate result of the defendant's breach of the contract in refusing to deliver the film.

Plaintiff, in order to recover anticipated profits, must plead and prove that he has made actual contracts to produce the film and that defendant when he agreed to sell it knew that plaintiff had made or contemplated making such contracts which he could not fulfil unless defendant delivered the film.

Before the jury, in such case, can return a verdict based on a loss of future profits, plaintiff must present some evidence from which can be drawn a reasonable inference as to the probable approximate amount of such loss, and where the proof as to the loss of profits is unsatisfactory, consisting largely of legal conclusions, properly objected to, that plaintiff had definite contracts with certain persons, and he is permitted to show the profits made by the firm defendant claimed to represent, on the initial production of said film, from which evidence the jury was allowed to infer that plaintiff would have earned similar profits, the judgment entered on a verdict in favor of plaintiff will be reversed and a new trial ordered.

APPEAL from a judgment of the City Court of the city of New York entered on a verdict in favor of the plaintiff and from an order denying defendant's motion for a new trial.

Tobias A. Keppler (David B. Kaminsky, on the brief), for appellant.

Albert M. Levy, for respondent.

LEHMAN, J.   The plaintiff claims in his complaint that on the 2d day of January, 1914, plaintiff and defendant entered into a contract whereby the defendant agreed to sell and deliver to the plaintiff a motion picture film entitled "In the Hands of Impostors" and the plaintiff agreed to pay to the defendant the sum of nine cents per lineal foot of said film and that thereafter the defendant refused to deliver the film to the plaintiff.   There is a sharp conflict of testimony as to whether the defendant, as either principal or agent, agreed to sell this film to the plaintiff.   It is his contention that he sold the film as agent for the Great Northern Film Company to one Adler, representing the firm of Ascher & Adler, and that thereafter he delivered the film to Ascher.   The defendant's contentions are supported by some documentary evidence and there are some improbabilities in the plaintiff's story but we need not now consider whether the judgment is against the weight of evidence because in any event the trial justice has erroneously admitted considerable evidence bearing upon the question of damages highly prejudicial to the defendant.

The alleged contract between the plaintiff and the defendant calls for the sale and delivery of a single film, not for any copyright or producing rights to the subject matter of the film.   It was an ordinary contract

for the sale of the film.   There is no question but that the firm of Ascher & Adler at the time the contract was made owned a similar film and was exhibiting it in New York city, and that this defendant could have lawfully sold to them or others an indefinite number of the copies of the same film.   The ordinary rule of damages for the breach of such a contract is the difference between the market value of the film and the contract price.   It appears that the defendant or the corporation he claims to have represented was the sole manufacturer of this particular film and that he refused to deliver the film contracted for or any similar film to the plaintiff.   In view of this fact I think that it is fair to assume that there was no market price in this city for this particular film and that the plaintiff is, therefore, entitled to recover as special damages both the expenses incurred by him in preparing to exhibit the film and loss of profits, provided such expenses and loss of profits have been properly pleaded and were within the contemplation of the parties and were the proximate result of the defendant's breach of contract.   Although the film was to cost only about $300, and although there is no proof that other films of the same quality could not be bought for the sum of nine cents per running foot, the plaintiff has recovered damages for the sum of over $600 for lost profits. In other words, the jury has found that this $300 film was actually worth $900 to the plaintiff.   The reason for this claim is that the plaintiff intended to use this film to gratify a morbid craving on the part of some of the public to see films showing unsavory details of the so-called white slave traffic and the plaintiff testified that he was about to produce this film under the name of the "Exposure of the White Slave Traffic;" had already made contracts for this purpose and would have realized large profits if he could have produced

this or any other film of substantially the same subject matter under that name, but that he could not, at the time, buy any films bearing on this subject. So long as the production of such films is not illegal, the plaintiff is entitled to receive such damages if he has properly proven them. In this case, however, I do not think that he has properly proven them. In order to recover anticipated profits under actual contracts, the plaintiff must plead and prove that he has made such contracts and that the defendant when he agreed to sell the film knew that the plaintiff had made or contemplated making such contracts which he could not fulfill unless the defendant delivered the film to him. The proof on this element of the case is very unsatisfactory and consists largely of bare legal conclusions properly objected to that the plaintiff had definite ''contracts'' with certain persons.

The plaintiff, however, also attempted to show probable profits in other ways. In the first place, he was permitted to show the profits made by the firm of Ascher & Adler on the previous production of the same film at the Bijou Theatre, New York city, and from this evidence the jury was allowed to infer that the plaintiff would have earned similar profits. No such inference could be drawn from this testimony because the circumstances surrounding the production were entirely different. That production was the first production; the plaintiff's production would not only have followed this production, but Ascher, one of the original producers, had similar films and plaintiff would have had to meet this competition. As plaintiff's own witness stated, ''the longer you run something, the less the demand gets. The more exhibitors that play a film the less demand it gets if it is shown in a neighborhood.'' Moreover, as shown above, the claim of extraordinary value of this film rests not upon any proof

of extraordinary beauty or merits or originality which might appeal to the sound, healthy instincts of the great mass of theatre-goers; its appeal was frankly to the sensational and the morbid and it was intended to meet a demand created or at least stimulated by reports of a police raid on a production of somewhat similar name in another theatre.

However great the success of a film may be temporarily under such circumstances, the court will not assume that the demand for such films is in any way steady. On the contrary, both the evidence and the common experience show that such demand is apt to be ephemeral, and creates quickly a supply which more than meets the demand, and the fact that a particular film catering to a patronage created temporarily by such circumstances has earned a certain profit is utterly without probative value that such profits would continue for any length of time and after the film comes into competition with other similar films. Incidentally I may say that the undisputed proof is that this particular film not only would have met such competition but that its exhibition was actually prohibited thereafter in a considerable number of places. It is true that the plaintiff tried to meet this obvious objection to this kind of proof by testimony that from his own experience he could state that the demand was greater after January 15, 1914, than before that date. Assuming that such testimony can ever be competent it could become so only by proof that the conclusion has some reasonable basis. In this case, however, it appears that the plaintiff's conclusion is without any basis other than that the demand for such films had increased in New York during the weeks immediately prior to January fifteenth and such increase was due to the peculiar circumstances which I have touched upon above.

In addition to this testimony the plaintiff, over defendant's objection and exception, was asked the following questions and gave the following answers: "Q. Can you state from your own experience what would be the amount of the gross receipts which you would have derived from the exhibition of this film during the succeeding six months? A. Yes. Q. What would be the gross receipts? * * * A. A very conservative figure would be $200 a week for a period of six months." It is, of course, impossible to prove future profits either gross or net with certainty and the law does not require of the plaintiff any impossibility. Before the jury can, however, return a verdict based upon loss of future profits, the plaintiff must present to the jury some evidence from which it can draw a reasonable inference as to the probable approximate amount of such loss. It is not sufficient to put the plaintiff on the stand, qualify him as an alleged expert and allow him to draw a conclusion from some undisclosed facts that he would have made a profit of a certain sum. That conclusion is one which the jury and not the witness must draw and it must be drawn from facts in the record and from such facts alone.

Judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

WHITAKER and FINCH, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.