K. & R. Film Company, Inc., Respondent, *v.* William A. Brady, Appellant.

(Supreme Court, Appellate Term, First Department, October, 1918.)

Damages — breach of contract to furnish theatre for photo-play — when not entitled to recover loss of prospective profits — evidence.

> In an action to recover damages for defendant's refusal to carry out a contract for a theatrical production, no recovery can be had for loss of prospective profits without proof of actual profits obtained under at least approximately similar conditions.
>
> Where, in an action to recover damages for defendant's breach of a contract to furnish plaintiff a certain theatre equipped for the production of a photo play and to pay plaintiff fifty per cent of the gross profits, the evidence at the close of plaintiff's case shows that after it had expended a certain sum in preparing for the production of the film defendant informed it that he did not desire to produce any moving pictures in the theatre and that in any event he had secured another attraction

for the time for which he had agreed to furnish the theatre for the production of plaintiff's film, and offers no testimony, the plaintiff, while entitled to judgment for the amount expended by it in preparing to carry out its part of the contract, is not entitled to recover as damages the loss of prospective profits.

While in such a case loss of prospective profits is the real measure of damages, the plaintiff is required to prove as part of its case the profits which it has lost, and so far as they are purely speculative and not susceptible of proof no recovery can be had therefor.

Finch, J., dissents.

APPEAL by defendant from a judgment entered in the Municipal Court of the city of New York, borough of Manhattan, third district, in favor of plaintiff.

Nathan Vidaver (I. Maurice Wormser, of counsel), for appellant.

O'Brien, Malevinsky & Driscoll (Arthur F. Driscoll, of counsel), for respondent.

LEHMAN, J. The plaintiff has recovered a judgment for the sum of $1,000 as damages for the breach of a contract theretofore made by the defendant whereby he agreed to furnish to the plaintiff a certain theatre in Wilmington, Del., equipped for the production of a photo play entitled "The Masque of Life," and to pay to the plaintiff fifty per cent of the gross receipts from the production of such play. The plaintiff showed that after it had expended the sum of $152.28 in preparations for the production of the film the defendant through his agent informed it that he did not desire to produce any moving pictures in the theatre and that in any event he had secured another attraction for his theatre during the time for which he had agreed to furnish the theatre for the production

of the plaintiff's film. The defendant presented practically no testimony and rested upon the plaintiff's case. There is no doubt but that upon the evidence presented the plaintiff should be permitted to recover at least the amount which it had expended in preparing to carry out its part of the contract which the defendant thereafter repudiated.

The present judgment, however, is not for the sum which the plaintiff expended in preparing to perform its part of the contract, but includes a recovery for loss of prospective profits. There is no doubt in my mind that in a case of this kind loss of profits which the plaintiff would have made is the real measure of the damages which he has suffered. In order, however, to recover such damages the plaintiff is required to prove as part of its case the profits which it has lost. In so far as these profits are purely speculative and not susceptible of proof they are not the subject of recovery. *Bernstein* v. *Meech,* 130 N. Y. 354.

The amount of profits to be derived from a theatrical or moving picture performance naturally depends upon a great many different conditions, and the proof that is required must be at least sufficient to remove the question of the amount of profits which might have been realized from the realm of speculation to the realm of reason. The success of the production depends partly upon the merits of the production itself and its power of attracting an audience. It also depends, however, upon the amount of the competition which it must meet in any particular locality. It further depends upon the size and attractiveness of the theatre and upon the question of whether the particular production is calculated to attract the particular clientele which is accustomed to go to such theatre and whether the patrons of such theatre would pay the price demanded for the seats in order to see this production.

Appellate Term, First Department, October, 1918.    [Vol. 104.

Obviously, ordinarily, it is difficult, if not impossible, for the plaintiff to produce proof which would show with any degree of certainty that if the production had been made it would have resulted in any profits, and which would give the jury any basis upon which such profits could be estimated. In the present case the plaintiff has attempted to supply this proof by showing that it produced the film at numerous other theatres within a radius of 250 miles of the city where defendant's theatre is located, and further showed the receipts obtained at such theatres during the production of the film. It appears, however, that in all these theatres the price of seats was one-half or less than the price of the seats in defendant's theatre, and there is no evidence that they were ordinarily used for the same class of productions as defendant's theatre. Moreover, the plaintiff fails to show the number of other theatres in such places and the amount of competition which the plaintiff met in those cities or which it would be required to meet in the city of Wilmington. There is no evidence that the defendant's theatre has been previously used for moving picture productions or could be successfully used for such purpose. The conditions surrounding those productions are so different from the conditions surrounding the proposed production in the defendant's theatre that they can furnish no reasonable basis for determining that the plaintiff would have obtained any similar profits from his production in Wilmington. No case has been cited where any recovery for profits has been permitted upon a refusal to carry out a contract for a theatrical production without proof of actual profits obtained under at least approximately similar conditions. In fact, the only case cited by the respondent where such profits were recovered is an unreported case where apparently the plaintiff was able to show the actual profits realized

in that particular theatre during a period of time when the parties were performing the contract which was subsequently breached.

It follows that the judgment must be reversed and a new trial ordered, with thirty dollars costs to appellant to abide the event.

Pendleton, J. (concurring). What plaintiff lost was the benefit of his contract. The value of the contract was therefore the basis of his damages. The agreement provides that plaintiff should receive one-half of the gross receipts taken in at the theatre. The value of this contract necessarily involves the chance or opportunity of receipts, and any evidence from which a reasonable inference can be drawn as to the amount of such receipts is therefore competent, and it is a question of law for the court as to whether such reasonable inference may be drawn from any particular fact sought to be proved. The province of the jury is to determine in the particular case what inference should be drawn from all the facts admitted in evidence. The character of the evidence must often depend on the nature of the issue involved, and when, as here, direct positive evidence of mathematical certainty is not available, considerable latitude is necessarily allowable as the best evidence attainable, and a corresponding increased responsibility is thereby thrown upon the jury. That some element of uncertainty is thus involved is no sufficient reason for denying to a party all relief nor is it on the other hand a justification for admitting in evidence facts from which an inference relative to the matters involved cannot reasonably be drawn. While it is not always easy to define the line, there is a line nevertheless and I think it very clear that in the case at bar the receipts in small towns or one-day stands at prices fifty per cent lower with con-

tinuous or numerous performances afford no fair basis for any reasonable inference as to what the receipts would have been under the contract now under consideration, and that the admission of such evidence was error. Especially is this true of the cases where the evidence shows the theatres are of an entirely different class from the one involved in this contract. It follows that the judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Finch, J. (dissenting).  There was sufficient evidence to go to the jury upon the amount of gross receipts, one-half of which the plaintiff was entitled to under its contract.

The breach of contract was due to the willful act of the defendant. There is also no question that the receipts were within the contemplation of the parties, and that the breach of contract was equally clearly the approximate cause of the loss. As has been well said by the Court of Appeals, "A person violating his contract should not be permitted entirely to escape liability because the amount of damages which he has caused is uncertain." *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205, 209. It is to be noted that the plaintiff was entitled by the express terms of the contract to one-half of the gross receipts and one-half of the profits. There were bound to be receipts and hence the plaintiff is entitled to a substantial amount of damage, and the only question remaining is as to the amount of damage, and hence the facts of the case at bar fall directly within the language of the case last referred to where it is also said: " But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever

for the breach." The case is one, therefore, where the plaintiff is entitled to submit the best evidence obtainable to the jury. *Schlossberg* v. *Brody,* 216 N. Y. 579; *Stevens* v. *Amsinck,* 149 App. Div. 220; *Wakeman* v. *Wheeler & Wilson Mfg. Co., supra.* In *Stevens* v. *Amsinck, supra,* Mr. Justice Carr, writing for the court, says: " Yet, where there has been a breach of contract, and it appears certain that some substantial damages have resulted, a defendant cannot escape liability for such damages simply because they cannot be ascertained exactly, and that, in order to approximate them, some speculative elements must enter into consideration; for, under such circumstances, a jury may indulge in ' reasonable conjectures and probable estimates ' arising from the other proofs."

It is clear that where a new theatrical production has not before been produced there is no criterion upon which to base any recovery of profits by way of damage, and such might also be the rule where a recovery is sought for like receipts as distinct from profits. The photo-play in the case at bar while it had not been produced in the city of Wilmington had been produced in approximately twelve other cities where it had played to from twenty-three per cent to sixty-two per cent of the capacity of the theatres. There is evidence from which it can fairly be inferred that conditions were similar in these cities to that of Wilmington, with the exception that it was proposed in Wilmington to charge a scale of prices of from twenty-five to fifty cents, whereas in the other cities the schedule of prices had been from ten to twenty-five cents. It is to be noted that the smaller price charged in Wilmington was the larger price charged in the other cities, so that in this respect also the conditions were similar. While the populations of the other cities were most of them considerably smaller than that of Wilmington, yet one at

43

least (Richmond) was twice the size of Wilmington and there is testimony that in certain of the cities at least the populations were of a nature similar to that of Wilmington. It is true that the number of other theatres in competition in each of the cities visited was not shown, but it does appear that the theatre in Wilmington was a large one.

The jury has allowed the plaintiff a recovery on the basis of thirty-four per cent of the capacity of the theatre. The average capacity between the lowest, namely, twenty-three per cent, and the highest, namely, sixty-two per cent, of the twelve cities visited would be about forty-three per cent, and hence the verdict of the jury has certainly been reasonable, when judged by its results. As has been well said where the breach of contract is due to the act and fault of the defendant by which profits have been prevented, " Courts ought not to be too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of profits." In *Wakeman* v. *Wheeler & Wilson Mfg. Co.* attention is called to the language of Cockburn, C.J., in *Simpson* v. *London & N. W. R. Co.,* L. R. (1 Q. B. D.) 274, where he said: "As to the supposed impossibility of ascertaining the damages, I think there is no such impossibility; to some extent, no doubt, they must be matter of speculation, but that is no reason for not awarding any damages at all." And in the same opinion attention is called to the " reasonable conjectures and probable estimates " for the jury to determine upon the facts submitted to them in the ordinary action for personal injuries where a recovery is allowed for such prospective damages as the jury are satisfied the party will sustain notwithstanding the uncertainty of the duration of life and other contingencies which may affect the amount. It is not stating it too strongly to say that in such an

action there is a much greater degree of uncertainty than in the case at bar.

It follows that the judgment should be affirmed, with costs.

Judgment reversed and new trial ordered, with costs to appellant to abide event.