STATES IMPORT AND EXPORT CORPORATION, Respondent,. Appellant,
*v.* THE HARTFORD FIRE INSURANCE COMPANY, Appellant,
Respondent.

Second Department, October 17, 1924.

Insurance — profit insurance — action to recover on policy insuring against loss by fire on profits on finished merchandise — policy provided that loss of profits should be limited to profits that would have arisen by sale in ordinary course of business — evidence — error to admit opinion evidence as to what profits would have been made on sale several months after fire — profits should be determined by jury on facts relating to sales and prevailing prices at time of fire — loss of profits should not be based on single sale of finished goods that were damaged — instructions — error to refuse to instruct jury that profits should be limited to profits which insured would have earned in ordinary course of business under conditions and prices at time of fire — evidence — error to admit evidence of discussion between insured and insurance brokers — profits, as used in policy, mean gross profits — plaintiff's motion to add interest to verdict properly denied.

In an action to recover on a policy of profit insurance which insured against loss by fire on profits on finished merchandise and which provided that the loss of profits should be limited to profits that would have been received by the insured on the date of the fire from the sale of the damaged merchandise in the ordinary course of business, it is error to admit in evidence the opinion of a witness as to the profits that would have been realized on a sale of the goods that were damaged if they had been sold several months after the date of the fire, since opinion evidence is not admissible to establish the amount of profits, and, furthermore, the opinion was based on conditions prevailing several months after the fire occurred, whereas the policy expressly limited the insurance to profits that would have been earned in the ordinary course of business on the date of the fire.

The amount of the plaintiff's profits should have been determined by the jury upon facts presented as to sales of the goods and the prevailing prices of the goods at or about the time the fire occurred. This determination should not be based upon the sale of the entire amount of the goods at one time, since such a sale would not be in the ordinary course of business.

It was error for the court to refuse to instruct the jury that they were limited to the profits which the plaintiff would have earned in the ordinary course of its business under the conditions and prices prevailing on the date of the fire, since that limitation was contained in the policy which governs the rights of the parties.

It was error to admit in evidence testimony as to a discussion between the insurance brokers and the insured concerning another form of insurance and also to admit the form itself in evidence, since the insurance brokers were not shown to be agents of the defendant, and, furthermore, the contract between the parties was reduced to writing and evidence changing or varying the terms of it is not admissible.

*It seems,* that the word " profits " as used in the policy means the gross profits from the sale of merchandise.

The plaintiff's motion to add interest to the amount of the verdict was properly denied.

KELLY, P. J., dissents in part.

APPEAL by the defendant, The Hartford Fire Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 19th day of November, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 12th day of November, 1923, denying the defendant's motion for a new trial made upon the minutes.

Appeal by the plaintiff, States Import and Export Corporation, from that portion of said judgment which denied the plaintiff interest, and also from an order entered in said clerk's office on the 19th day of November, 1923, denying its motion to correct the verdict of the jury by adding interest.

*Frank S. Gannon, Jr.* [*Mark G. Holstein* and *Mark Jacobs* with him on the brief], for the plaintiff.

*Dickinson W. Richards* [*Joseph W. Zeller* with him on the brief], for the defendant.

JAYCOX, J.:

The plaintiff declared upon a policy of insurance issued by the defendant to the plaintiff, insuring it to an amount not exceeding $80,000, from June 21, 1921, at noon, to June 21, 1922, at noon, against all direct loss and damage by fire on profits on finished merchandise, sold or unsold, while contained in buildings situate at Nos. 157–159 Atlantic avenue, borough of Brooklyn, city of New York. The manner in which the profits on said merchandise should be ascertained is provided for in a rider attached to said policy. I quote therefrom such provisions as are applicable:

" If during the term of this policy such merchandise, or any portion thereof, shall be destroyed or damaged by fire, this Company shall be liable for its *pro rata* share of any loss of profits * * * (to be ascertained as stated below) on such merchandise which may result from such fire, which loss shall not exceed the percentage of damage shown by the final outcome of the adjustment of the loss on merchandise by companies insuring same, including result of any salvage handling operations whether completed before or after such adjustment; or, if there be no insurance on said merchandise, then by such ascertainment and estimate by the parties hereto as is provided for in the printed portion of this policy.

" Loss of profits * * * shall not exceed the percentage of loss on merchandise as finally adjusted nor the percentage or percentages of profits * * * that would have been receivable by the insured on the date of the fire from the sale of the damaged merchandise in the ordinary course of the insured's business.

" Where the word ' property ' is used in this policy or clauses attached hereto, it is understood to mean   *   *   *   profits on the merchandise described."

The plaintiff further alleged that on the 22d day of July, 1921, while it was engaged in carrying on its business at the address given above, a fire occurred whereby a large quantity of finished merchandise owned by the plaintiff and contained in said premises was in part destroyed and in part damaged; that the stock of finished merchandise at the time of the fire was insured in various insurance companies and that the final outcome of the adjustment by the companies insuring the same was the fixation of the value of said stock at $173,147.92; that the value of the merchandise destroyed or damaged by said fire was the sum of $95,000; that the percentage of loss was indicated by the ratio between the last two amounts; that but for the said fire the plaintiff would have received large profits on the merchandise destroyed, and the profits receivable by the plaintiff on the date of the fire from the sale of the damaged merchandise in the ordinary course of the plaintiff's business would have amounted to the sum of $20,729. The complaint then contains the usual formal allegations as to compliance with the conditions of the policy and alleges an error in the proofs of loss by which the loss was stated to be $19,853.10, and demands judgment for the sum of $20,729.

The answer of the defendant admits the issuance of the policy, the fire, the adjustment of the loss thereunder and denies the allegations as to profits.

 The plaintiff proved by its vice-president that he, his brother, and a Mr. Godfried are the only persons interested in the corporation; that prior to the organization of the corporation they were engaged in the same business which the corporation took over. They had conducted such business as a partnership since 1888. In their business they bought clippings of cloth from the cutting trade and also from dealers. These clippings were from ladies' and men's wear. They were assembled, separated into classes and then sold to textile concerns, which rewove them into cloth. The plaintiff was organized about January, 1921. At the time of the organization the partnership sold to the corporation approximately $140,000 worth of different classes of woolen clippings at certain specified prices. From that time until the time of the fire the plaintiff purchased about $110,000 worth of additional clippings. During this time they sold about $50,000 worth of clippings. At the time of the fire they had on hand about $200,000 worth of clippings. The witness was then permitted to testify to a conversation he had with the insurance broker through whom

the insurance was placed.   He testified to what he told the broker, the different forms that were shown him and the reason why he selected the form of rider annexed to the policy in suit.   This was objected to, the objection overruled and an exception taken.   He further testified that the amount claimed in the complaint, $20,729, was arrived at by going over the figures of the accountants, based upon the merchandise sold as against the price paid for it.   The witness was then asked:   " Now, from your experience in 'the business that you have described to us, will you tell us what is the usual rate or per cent of profit on the sale of that material? " This was objected to as incompetent, immaterial and irrelevant as there was no evidence of any regular rate of profit and that the award of profits in any case must depend upon the cost of the goods to the plaintiff and the fact, or otherwise, of it earning any profit thereon.   The objection was overruled, exception taken, and the witness replied:   " Well, that would vary any time, according to the market.   We were buying material after a depression, but the time when it is inactive, and suddenly actively, well, profits are twice or three times as large.   You might sometimes make one hundred or two hundred per cent, but on the average we have always averaged fifteen or twenty per cent profits for twenty years." On the date of the fire, the witness testified, this material could not be sold as the textile mills were not operating.   They ceased to operate about May, 1920, and resumed operations fifteen months thereafter — the latter part of 1921.   He kept himself posted and was familiar with the trade all the time; knew of dealings in merchandise by other people in the same line of business in the latter part of 1921.   The following question was then propounded: " Now, will you tell the Court, assuming that in the latter part of 1921, you had sold this material that was damaged in the fire, will you tell the Court what profit you would have made? "  Objection was duly made that the question was incompetent, irrelevant and immaterial; objection overruled and exception taken.   Counsel then asked:   " How much would you have made, if you had sold the material?   A. Well, we couldn't have sold them all in one day. Q. No; in the ordinary course of business?   A. That material, which was destroyed by fire, would have brought us anywhere from three hundred and fifty to four hundred and fifty thousand dollars."   The witness further testified that if the merchandise had been sold when the mills resumed the profits would have been at least $100,000.   He testified to the different items of expense in conducting the business and testified that those expenses amounted to $16,545.45 during the time when plaintiff's sales amounted to $60,000, and that from February to July there was

**378** States Import & Export Corp. *v.* Hartford Fire Ins. Co.

Second Department, October, 1924. [Vol. 210]

a steady decrease in the amount of sales. Not much was sold during this time. The prices fluctuated. Some of the goods involved in the fire might have been on hand from four to five years and some only six or eight months or a year. When asked to compare the prices in 1920 with those in 1921, he said: " The rags which we turned into the corporation at $140,000, represented an actual cost of about $400,000." Due to the depression in prices they lost money during 1920. The selling price of the goods sold during 1921, prior to the fire, was about twenty to twenty-five per cent above the purchase price. Further testimony of the same character was then introduced, after which the plaintiff was permitted to amend the complaint to conform to the proof.

The plaintiff then rested and the defendant moved to dismiss the complaint on the ground that there was no competent proof of profits and that the proof introduced showed a loss instead of a profit. The motion was denied and an exception taken. There is no occasion for reviewing the testimony offered by the defendant. There is no question raised as to the verdict being contrary to the evidence.

The first point urged by the appellant is that the trial court erred in admitting testimony that if the plaintiff had sold the goods in the latter part of 1921 it would have made a profit of at least $100,000. It is claimed that this evidence is objectionable on two grounds: A. It was opinion evidence and as such was inadmissible to establish the amount of the profits. B. It had to do with conditions alleged to prevail months after the fire, whereas the policy expressly limited the insurance to profits that would have been earned in the ordinary course of business on the date of the fire. As I view *Wakeman* v. *Wheeler & Wilson Mfg. Co.* (101 N. Y. 205, 217), it strongly supports the defendant's position. In that case the plaintiff had a contract with the defendant to establish general agencies for the sale of the defendant's sewing machines in the Republic of Mexico. If the plaintiff sold fifty machines in one locality he was to have the right to an exclusive agency in that locality. The machines were to be sold to him at a fixed price and the proof showed that he was able to sell them so that after deducting all expenses he had a profit of four dollars on each machine. He obtained an order for fifty machines in San Louis Potosi. This order was filled. He obtained another order for fifty machines in another locality and for one machine in still another locality. The defendant refused to fill the last two orders and repudiated its contract with the plaintiff. Plaintiff sued to recover his damages and the trial court held that he was only entitled to the loss of profits on the two orders which the

defendant declined.   The Court of Appeals, however, held that the measure of his damages was the value of his contract at the time it was repudiated by the defendant and it stated in the opinion the facts which might be proven by the plaintiff and submitted to a jury for their determination of the value of the contract, and then, in the course of the opinion, it said: " We think the opinions of witnesses as to the value of the agreement, as to the profits which it or any agency established in pursuance of it could produce, as to the damages plaintiffs realized, and as to the number of machines they could have sold, were properly excluded.   This was not a case for expert or opinion evidence.   There was no certain basis of facts proved, or facts assumed upon which an opinion could be based.   The conflicting opinions of interested witnesses, selected because of their favorable opinions, instead of aiding the jury would probably add to their embarrassment.   The safer rule in all such cases is to exclude opinions and receive the facts   *   *   *."

In this case I think that opinion evidence should not have been received.   The amount of the plaintiff's profits was to be determined by the jury and the facts upon which that determination should be made should have been proven and the jury permitted to determine the result.   Instead of this, without proving a single sale and without proving the prevailing price of these goods at any time, the plaintiff is permitted to assume, upon factors which are entirely unknown, the amount of profits which it would have realized months after the fire if the goods had all been sold at that time.   The date selected was apparently the date of the peak price in the trade.   The plaintiff is allowed to assume that it would have had the foresight and the business acumen to retain all of this property without any sale whatever until the highest price was reached and then that upon that date it would have disposed of the entire stock of goods.   This is entirely contrary to ordinary business experience and contrary to the terms of the policy.   The evidence shows that during the time the plaintiff was in business it had dribbled out a small quantity of goods, amounting to a sales price of $60,000, in about six months.   It is fair to assume that the same conduct would have continued thereafter, and immediately upon the beginning of the increase in price it is probable that the sales would have increased in volume, so that it is altogether unlikely that the whole stock of goods would have been disposed of at one time when the highest price had been reached.   A sale of that kind is not within the terms of the policy because profits are to be fixed upon the sale of the damaged merchandise in the ordinary course of business on the date of the fire.   It would not have been the ordinary course of business to have held all this

**380**  STATES IMPORT & EXPORT CORP. *v.* HARTFORD FIRE INS. CO.

Second Department, October, 1924.                          [Vol: 210

stock of merchandise and to have disposed of it at the unknown date in the mind of the witness when he testified that the profits would have been $100,000.

Upon this question Judge LEHMAN, now in the Court of Appeals but then sitting in the Appellate Term, said: " Before the jury can, however, return a verdict based upon loss of future profits, the plaintiff must present to the jury some evidence from which it can draw a reasonable inference as to the probable approximate amount of such loss. It is not sufficient to put the plaintiff on the stand, qualify him as an alleged expert and allow him to draw a conclusion from some undisclosed facts that he would have made a profit of a certain sum. That conclusion is one which the jury and not the witness must draw and it must be drawn from facts in the record and from such facts alone." (*Levison* v. *Oes*, 98 Misc. Rep. 260.) " This question of value is to be determined upon the relevant facts antecedent and subsequent to the breach, and is not the subject of opinion evidence." (*Stevens* v. *Amsinck*, 149 App. Div. 220.)

The policy expressly limited the profits insured to be those receivable by a sale in the ordinary course of business on the date of the fire. The evidence complained of permitted the jury to fix the plaintiff's profits as of a date long subsequent to the fire. It may be that the situation and the condition of the market at the time of this fire would require and permit evidence to be introduced as to prices shortly prior and subsequent to the date of the fire — not for the purpose of fixing the amount of the profits which the plaintiff might have made by a sale of its stock of merchandise on those dates, but for the purpose of determining the amount of its profits if the goods had been sold in the ordinary course of business on the date of the fire. This was the question which the jury should have determined with all the facts placed before it. This question as to the date when the profits were to be estimated was clearly presented to the court and the court unequivocally declined to limit the plaintiff to the date of the fire. The defendant asked the court to charge that the consideration of the jury must be restricted to the profits which the plaintiff would have earned in the ordinary course of its business under the conditions and prices prevailing on the date of the fire. This was refused and an exception taken. This request was repeated in other terms and the court consistently refused to charge as requested. I think this was clearly error — that the terms of the policy clearly provided that the loss of profits should not exceed the amount that would have been receivable by the insured on the date of the fire from the sale of the damaged merchandise in

the ordinary course of the business of the insured. It seems to me that if this means anything it means that a sale of the insured's merchandise was to be assumed as of the date of the fire, at the then market price, and if such an assumed sale showed a profit to the insured, that profit was the profit insured by the policy. In this case the jury should have been instructed so to limit their verdict. I think it is also clear that the evidence as to the discussion with the brokers of another form of insurance and the form itself were erroneously admitted in evidence. There is no proof or claim that the brokers were the agents of the defendant. They were, therefore, unable to bind the defendant by anything that they may have said. Further than that, the contract between the parties was reduced to writing and any evidence changing or varying the terms of that policy or contract was inadmissible.

As the action must be retried, we deem it advisable at this time to express our views as to what is meant by the word " profits " as used in this policy.

It is to be observed that the defendant does not insure the plaintiff's profits on its business but on its finished merchandise. If the insurance was of profits on the business, then the expense of conducting the business would be a factor in determining what profit, if any, was made. But if the insurance is on the profits on merchandise, then it seems to me that it is no concern of the insurer how the insured is to spend the profit realized upon the goods. In this case, if the corporation desired to show no profits and for that purpose voted large salaries to the officers and thus absorbed all the profits, can it be that the insurer would escape all liability although the merchandise actually sold for 100 per cent more than it cost? Or take the reverse of that proposition and assume that the only stockholders are the officers and that they each own an equal number of shares of the stock in the corporation and they agree not to vote themselves any salaries and to divide all the profits as dividends. As a result a large profit would be shown although the selling price bore the same relation to the purchase price as in the other illustration. Or assume that the insured has in storage a stock of goods that cost $1,000, and he has his profits thereon insured. The only expense is the storage, which at the time of the fire amounts to $1,000, and at that time the goods could be sold for $2,000. Can it be that the insurer escapes liability because the profits will all be used up in carrying the goods? If this is the correct construction of this provision of the insurance policy, then the purpose of obtaining such insurance is to a large extent frustrated. I have no doubt that such insurance is obtained largely to cover the risk of carrying a stock of mer-

chandise over a period of depression and until there is a favorable market. Storage is but an obvious incident in carrying a stock of merchandise. It seems to me that in this case sorting, grading and baling are all of the same character and so far as the subject of the insurance is concerned do not decrease the profits. These are expenses to be paid out of the profits when the goods are sold. The insurance was, therefore, upon what are commonly known as " gross profits," and the jury should have been so instructed.

I recommend that the judgment and order be reversed upon the law for the errors pointed out above in the admission of evidence and also for the error in the charge, and a new trial granted, costs to abide the event. The plaintiff's motion to add interest to the amount of the verdict was properly denied, and the order should be affirmed.

Rich, Young and Kapper, JJ., concur; Kelly, P. J., dissents from the reversal of the judgment and order, and reads for affirmance, but concurs in the affirmance of the order as to interest.

Kelly, P. J. (dissenting):

I think the judgment should be affirmed. Defendant for premiums paid, engaging in the business of insuring future profits, cannot complain because it may be difficult to ascertain the amount of future profits. It seems to me, the plaintiff presented the best evidence it had. It is said that the evidence is speculative, but future profits are necessarily speculative, and this is what plantiff wished to insure and what defendant agreed to insure. I do not agree that, because plaintiff's stock was destroyed by fire at a time when there was no market for its goods because the mills which it supplied were temporarily closed, its profits were measured by market price at the time of the fire. The mills subsequently resumed business and I think the jury could consider the profits which might reasonably be expected from sales, when sales could be made in the regular course of business. That the evidence is to a certain extent speculative results from the nature of defendant's contract of insurance. I concur in the affirmance of the order denying plaintiff's motion to add interest to the damages found by the jury.

Judgment and order denying motion for a new trial reversed upon the law, and a new trial granted, costs to abide the event. Order denying plaintiff's motion to add interest to the amount of the verdict affirmed.