LOIS ARNOLD, Appellant, v. GRAMERCY COMPANY et al., Respondents.— As very adequately pointed out by the learned Justice at Special Term (see 30 Misc 2d 852), the letter from plaintiff's attorney, dated January 27, 1960, was not a clear and unqualified acceptance of the prior written offer made to her. Rather, the letter appears to have been carefully worded by the plaintiff's attorney so that he would later be able to say that there were matters not yet fully agreed upon, and, thus be in a position to claim that the plaintiff was not bound to a contract. In any event, under the circumstances here, it does not appear that there was a meeting of the minds on the terms of a contract, and, thus, a binding contract was not formed. In support of her claim that a binding

contract was in fact made, the plaintiff refers to the minutes of a meeting of the board of trustees of the owner corporation held on March 15, 1960, wherein it was stated that, "It was decided to authorize Mr. Jones to go ahead with the contract for the sale of the apartment she occupies, to Miss Arnold. It was emphasized, however, that this contract should not absolve her from general building responsibilities for violations, exclusive of those incurred in remodeling her own apartment." It does not appear that the aforesaid action of the defendant owner's board or the terms thereof were ever communicated to the plaintiff. In fact, the plaintiff (according to her brief) claims that neither she nor her attorneys heard from the defendants in reference to the same. Therefore, this action on part of defendant's board may not be given the effect of an acceptance of the counter proposals of plaintiff set forth in her letter of January 27, 1960. (See *Fowler-Curtis Co.* v. *Dean*, 203 App. Div. 317, 318; also 9 N. Y. Jur., Contracts, §§ 29, 31; 17 C. J. S., Contracts, § 45.) Furthermore, the minutes of the March 15 meeting of the defendant's board, taken as a whole, do not have the effect of proving the existence of a binding contract between the parties. Rather, they tend to establish the contrary. The statement that Mr. Jones was "to go ahead with the contract" is entirely consistent with a meaning that Mr. Jones was to continue his negotiations with plaintiff to arrive at a satisfactory contract. Then the statement following that the "contract should not absolve her [plaintiff] from general building responsibilities for violations", confirms that there was still this area of disagreement to be satisfactorily resolved. The board was still insisting that the plaintiff assume these responsibilities concerning which there had been considerable dispute between the parties. In any event, whether or not there was a meeting of the minds of the parties, so as to effectuate a binding contract, was a question of fact (see 9 N. Y. Jur., Contracts, §§ 9, 16, 18; *White* v. *Hoyt*, 73 N. Y. 505, 512; *Stevens* v. *Amsinck*, 149 App. Div. 220, 228; *Aker* v. *Fredella Co.*, 227 App. Div. 226), and the record clearly supports the determination by the trial court that the plaintiff failed to prove such a contract. Finally, we agree with the trial court that the plaintiff failed to establish an actionable conspiracy on the part of the defendants and that she failed to establish a proper basis for a declaratory judgment action. Concur — Botein, P. J., Breitel, McNally and Eager, JJ.; Valente, J., dissents in the following dissenting memorandum: The complaint was dismissed upon findings that plaintiff was not entitled to specific performance because she had failed to establish the existence of a binding contract, and that no conspiracy to deprive plaintiff of an opportunity to purchase the apartment occupied by her had been proven. Specifically, plaintiff's cause of action for declaratory judgment was dismissed because she had an appropriate remedy by review, when, and if, a certificate of eviction was applied for and issued by the Rent Commissioner. In the decision rendered by the learned Trial Justice (reported in 30 Misc 2d 855), the dismissal of the cause of action for specific performance is based upon the conclusion that plaintiff's letter of January 27, 1960 — on which she predicates her claim of acceptance of the owner's offer to sell her the apartment on an "as is" basis — was not an unqualified acceptance but contained such conditions and reservations as to constitute it a counteroffer. However, the decision fails to mention, and thus gives no effect to, the fact that at a meeting of the board of trustees of the owner corporation, on March 15, 1960 — when plaintiff's letter of January 27, 1960 evidently was under discussion — it

was decided "to authorize Mr. Jones to go ahead with the contract for the sale of the apartment she occupies, to Miss Arnold". This significant action by the board of trustees can be given only one of two possible interpretations. It may be deemed an acceptance of plaintiff's so-called counteroffer contained in her letter of January 27, 1960, or a practical construction of that letter as an unqualified acceptance of the owner's offer coupled with precatory language regarding the installation of kitchen equipment. In either view, a binding contract was concluded entitling plaintiff to specific performance. Moreover, the effect to be given the resolution of the board of trustees on March 15, 1960, should be viewed in relation to the subsequent actions of the defendants, which, if they do not spell out a conspiracy to deprive plaintiff of an opportunity to purchase her apartment, were certainly not characterized by frankness and candor. Following the resolution of March 15, 1960, plaintiff next officially heard from the owner or its agent in May, 1960, when she received a letter to the effect that the board had withdrawn the apartment from the market. (There was testimony that plaintiff had telephone conversations with the agent during the intervening period, but the contents of these conversations were not disclosed.) The letter of May 6, 1960 did not accurately paraphrase the action of the board, since the board had decided "temporarily to withdraw the apartment from the market" and the letter gave no hint of the *temporary* nature of the withdrawal. Despite plaintiff's subsequent remonstrance about the withdrawal of the apartment from the market and her insistence that she had a contract for its purchase, defendants did not communicate with her, and she learned, for the first time in December, 1960, that the apartment had been secretly sold to her neighbor (a member of the board of trustees of the owner corporation) in September, 1960. On the record before us, a court of equity should have intervened to upset this palpable, disingenuous scheme to sell the apartment to another and should have decreed specific performance. I agree with the determination that declaratory judgment would have been premature and that plaintiff was sufficiently protected by her remedy to review the action of the Rent Commission if a certificate of eviction were applied for and granted. However, I dissent from the affirmance of the judgment, and would reverse and grant plaintiff specific performance.